UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROL H.,

                                        Plaintiff,

v.                                                              1:22-CV-112
                                                                   (BKS/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

CAROL H.
  *Plaintiff, Pro Se*

U.S. SOCIAL SECURITY ADMIN.              HUGH DUN RAPPAPORT, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

Plaintiff Carol H. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") during a Continuing Disability Review, finding that Plaintiff, who was previously found to be disabled, was no longer disabled as of April 9, 2019. (Dkt. No. 1). This matter was referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States Chief District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Currently before

this court is Defendant's motion for judgment on the pleadings. (Dkt. No. 21). Plaintiff has not filed written opposition to this motion. For the reasons set forth below, this court recommends that the Commissioner's motion be granted.

## I.    PROCEDURAL HISTORY

On December 7, 2015, the Commissioner found that Plaintiff was entitled to Disability Insurance Benefits ("DIB") because her gallbladder cancer qualified as a Listed Impairment. (T. 12, 135, 166). On April 9, 2019, the Commissioner administratively determined that Plaintiff was no longer disabled as of that date, due to medical improvement. (T. 135-149, 152-159). Plaintiff requested administrative reconsideration on April 19, 2019, and the determination was upheld on November 8, 2019. (T. 161-177).

On November 19, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T.178). Following several adjournments to allow Plaintiff an opportunity to obtain representation, ALJ Andrew J. Soltes, Jr. held a telephone hearing with the consent of Plaintiff and Plaintiff's counsel, at which Plaintiff and vocational expert ("VE") Albert Sabella each testified. (T. 70-116). On June 14, 2021, the ALJ found that Plaintiff's disability had ended on April 9, 2019, and she had not become disabled again since that date. (T. 7-31). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 8, 2021. (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.    Continuing Disability Review Standard for Termination of Benefits

The regulations provide that after the Commissioner makes a finding of disability, this finding is evaluated "from time to time" to determine if the individual is still eligible. *See* 42 U.S.C.§ 423(f); 20 C.F.R. §§ 404.1589, 404.1590. Under the Continuing Disability Review standard, the decision-maker follows a slightly different procedure than the ordinary five-step disability sequential evaluation. *Sharon A.H. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1014 (BKS/DEP), 2022 WL 3141718, at *4 (BKS/DEP) (Rep't-Rec), *adopted*, 2022 WL 2865971 (N.D.N.Y. July 21, 2022). Termination of benefits may occur when there is substantial evidence to show that a "medical improvement restores the individual's ability to work. *Michael M. v. Comm'r of Soc. Sec.*, No. 5:17-CV-1038 (ATB), 2019 WL 530801, at *7 (N.D.N.Y. Feb. 11, 2019).

The multi-step analysis for a Continuing Disability Review is as follows: (1) whether the individual is engaging in substantial gainful activity; (2) if they are not, whether he or she has an impairment or combination of impairments which meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"); (3) if he or she does not, whether there has been medical improvement shown by a decrease in medical severity; (4) if there has been medical improvement, whether that improvement is related to the individual's ability to do work in that it results in an increase in residual functional capacity ("RFC") compared to the time of the most recent favorable medical decision; (5) if the medical improvement is related to the ability to do work, whether the individual's current impairments in combination are severe; (6) if

4

one or more impairment is severe, the decision-maker will then assess the individual's current

ability to engage in substantial gainful activity by assessing his or her RFC based on current

impairments and consider whether he or she can perform the work they performed in the past;

and (7) if the individual cannot perform his or her past relevant work, the decision-maker

assesses whether he or she can perform other work existing in significant numbers in the national

economy. 20 C.F.R. §§ 404.1594(f), 416.994(f).

These steps are intended to assure that the review of disability cases is conducted in a

uniform manner, and that "any decisions to stop disability benefits are made objectively,

neutrally and are fully documented." *Deronde v. Astrue,* No. 7:11-CV-998, 2013 WL 869489 at

*2 (N.D.N.Y. February 11, 2013) (quoting 20 C.F.R. § 404.1594(f)).  For Continuing Disability

Review claims, the burden to demonstrate medical improvement relating to the individual's

ability to perform work "rests with the Commissioner at every step."  *DeRonde*, 2013 WL

869489, at *3 (citing 20 C.F.R. § 404.1594(f)(1)-(8).

## III.    <u>FACTS</u>

Plaintiff sought emergency treatment for abdominal pain in October 2015, and was

diagnosed with "poorly differentiated adenocarcinoma of the gallbladder" that had also "invaded

into the perimuscular connective tissue." (T. 605).  In December 2015, she had surgery to

remove her gallbladder, a portion of her liver and abdominal lymph nodes, and underwent

chemotherapy between January and June 2016. (T. 606-607).  Follow-up imaging in 2017, 2018,

and 2019 showed no evidence of recurrent or metastatic disease. (T. 1100-1101).

Beginning in December 2015, Plaintiff received DIB based upon her cancer diagnosis

and treatment. (T. 12).  She has a limited work history that included jobs as a restaurant worker,

babysitter and nursing home aide. (T. 81-82, 389, 534).  Plaintiff has not worked since the

December 2015 disability determination, but briefly assisted an elderly couple with household chores on an unpaid basis. (T. 80-81). As of the Cessation Date, Plaintiff was 50 years old. (T. 72, 188, 1148.)

The record includes Plaintiff's treatment history for her physical and mental impairments. Rather than summarizing the records at the outset, I will refer to the pertinent records during my evaluation of the ALJ's disability determination.

## IV.   THE ALJ'S DECISION

First, the ALJ found that the most recent favorable medical decision, known as the "comparison point decision" ("CPD") was the disability determination dated December 7, 2015. (T. 12). The ALJ then found that, at the time of the CPD, Plaintiff had the following medically determinable impairment that met section 13.19 of the Listings: "Adenocarcinoma of gallbladder with multilocal intramucosal carcinoma into tissue status post surgery and chemotherapy." (*Id.*).

The ALJ next found that the medical evidence established that Plaintiff had the following medically determinable impairments since April 9, 2019: "cervical radiculopathy; stenosis and spondyololsis; obesity; carpal tunnel syndrome (status post procedure); asthma; and adjustment disorder and posttraumatic stress disorder ("PTSD"), adenocarcinoma of gallbladder with multilocal intramucosal carcinoma into tissue status post surgery and chemotherapy" (*Id.*)

The ALJ found that all of these rose to the level of severe impairments, but none met or medically equaled the severity of a Listed Impairment since April 9, 2019. (T. 12-15). The ALJ found that medical improvement occurred on April 9, 2019, due to a decrease in the medical severity of the impairments present at the time of the CPD. (T. 14-15). In reaching this conclusion, the ALJ cited records showing "no definitive evidence of recurrent or metastatic

6

disease within the chest, abdomen, or pelvis," and that Plaintiff "was doing well clinically" and

"was able to maintain an adequate appetite and energy level." (*Id.*)

After considering the functional limitations imposed by Plaintiff's severe impairments,

the ALJ found that Plaintiff had the RFC to perform less than the full range of light work. (T. 15-

20). Specifically, the ALJ found that Plaintiff:

> can perform frequent fingering and handling; occasional stooping, kneeling,
> crouching, and crawling; occasional climbing of stairs and ramps but no ladders,
> ropes, or scaffolds. No unprotected heights, and the claimant should avoid the use
> of heavy machinery as well [as] motor vehicles for work purposes. The claimant
> should avoid concentrated exposure to dust, fumes, gases, and other pulmonary
> irritants. The claimant is limited to unskilled low stress occupations defined as:
> simple routine tasks; basic work related decisions; [r]are changes in the workplace
> setting; and occasional interaction with the public.

(T. 15-16).

At the next step, the ALJ found that Plaintiff has no past relevant work. (T. 20). Relying

on the VE testimony, the ALJ then found that Plaintiff has been able to perform jobs existing in

significant numbers in the national economy since April 9, 2019. (T. 21-22). Accordingly, the

ALJ found that Plaintiff's disability ended on April 9, 2019 and Plaintiff has not become

disabled again since that date. (T. 22).

## V.    **ISSUES IN CONTENTION**

Defendant, the only moving party, argues that the ALJ's sequential analysis and his

ultimate determination regarding the cessation of Plaintiff's disability was supported by

substantial evidence. Dkt. No. 21 at 8-19.

Plaintiff was represented by counsel during part of the administrative hearing process but

commenced this proceeding pro se. (Dkt. No. 1.) Plaintiff did not file a brief or other papers

responsive to Defendant's motion, despite being given more than one opportunity to do so and

being advised on the potential consequences of failing to file a brief. (Dkt. Nos. 16, 17, 20).  In

the Northern District of New York, General Order No. 18 notifies parties of the consequences of

failing to file a brief in connection with a social security action: "A party's brief may be its only

opportunity to set forth arguments that entitle the party to a judgment in its favor.  The failure to

file a brief by either party may result in the consideration of the record without the benefit of the

party's arguments."  N.D.N.Y. General Order No. 18 at 6.  This court reminded Plaintiff of these

potential consequences when it *sua sponte* extended Plaintiff's deadline to file a brief in three

separate orders. (Dkt. Nos. 16, 17, 20).

"In a case such as this, where Plaintiff is proceeding pro se, General Order No. 18's

promise of a consideration of the merits complies with the special solicitude that the Second

Circuit mandates for pro se litigants."  *Hubbard v. Comm'r of Soc. Sec.*, No. 6:14-CV-1401

(GTS/WBC), 2016 WL 551783, at *4 (N.D.N.Y. Jan. 14, 2016).  As such, even when a plaintiff

declines to file a brief, a court may "examine[ ] the record to determine whether the ALJ applied

the correct legal standard and reached a decision based on substantial evidence."  *Id.* (citing

*Gregorka v. Comm'r of Soc. Sec.*, No. 6:13-CV-1408 (GTS/TWD), 2015 WL 3915959, at *4

(N.D.N.Y. June 25, 2015)).  This court will do so in this case, and issue its recommendation to

the District Court.

## VI.   LISTED IMPAIRMENT

### A.   Legal Standards

To qualify as a Listed Impairment, a medically determinable impairment must satisfy all

of the specified criteria in a Listing.  *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272

(N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment 'manifests only

some of those criteria, no matter how severely,' such impairment does not qualify." *Id.*, 614 F.

Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

>    **B.**    **The ALJ had substantial evidence to find that Plaintiff did not have a Listed**
>             **Impairment since the Cessation Date.**

The CPD found that Plaintiff's gallbladder cancer satisfied Listing 13.19 on December 7,

2015. (T. 135, 166).  Having found that Plaintiff had not engaged in substantial gainful activity

since the CPD, the ALJ considered whether Plaintiff had a Listed Impairment since the Cessation

Date of April 9, 2019. (T. 12-14).  Such review is governed by Listing 13.00(H)(2), providing

that:

> we will consider an impairment(s) that meets or medically equals a listing in this
> body system to be disabling until at least 3 years after onset of complete
> remission.  When the impairment(s) has been in complete remission for at least 3
> years, that is, **the original tumor or a recurrence (or relapse) and any**
> **metastases have not been evident for at least 3 years, the impairment(s) will**
> **no longer meet or medically equal the criteria of a listing in this body system.**

20 C.F.R. 404, Subpt. P, Appendix 1 § 1300(H)(2) (emphasis provided).  Under the Listing,

metastases is defined as "the spread of cancer cells by blood, lymph, or other body fluid.  This

term does not include the spread of cancer cells by direct extension of the cancer to other tissues

or organs."  20 C.F.R. 404, Subpt. P, Appendix 1 § 1300(I)(3).

Here, the ALJ conducted an appropriate analysis pursuant to Listing 13.00(H)(2) and

found no evidence of recurred or metastatic disease. (T. 12).  In reaching this conclusion, the

ALJ cited annual physician-reviewed CT imaging reports from 2017, 2018, 2019, and 2020

showing "no new evidence of recurrent tumor within the abdomen or pelvis." (T. 12, 1101-

1102).  He also considered oncology reports from the same period showing no abdominal pain or

changes in bowel or bladder habits, along with Plaintiff's self-reports to her oncologist that she

was "doing well." (T. 1100-1101).  The ALJ's conclusion is consistent with state agency

consultant Dr. R. Abueg's April 8, 2019 opinion that Plaintiff no longer met Listing 13.19. (T. 141). Dr. Abueg's opinion was based upon review of Plaintiff's then-available medical record, including the annual imaging reports from 2017, 2018, and 2019. (T. 141-148). Therefore, the ALJ had substantial evidence to support his conclusion that Plaintiff's gallbladder cancer was no longer a Listed Impairment.

The ALJ also considered whether Plaintiff's other physical and mental impairments met or medically equaled the severity of a Listed Impairment, including Listing 1.15 (Disorders of the Skeletal Spine), Listing 1.16 (Lumbar Spinal Stenosis), Listing 12.04 (Depressive, Bipolar and Related Disorders), Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders), and Listing 12.15 (Trauma and Stressor-Related Disorders). (T. 13-15). In finding that Plaintiff's back pain did not rise to the level of a Listed Impairment, the ALJ relied upon March 2019 consultative examination results showing full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally, along with physician-reviewed MRI reports from May 2021 showing no more than moderate degenerative changes in the lumbar spine. (T. 12, 532, 1418-1421). With regard to mental health impairments, the ALJ considered the April 2019 psychiatric consultative examination report describing "mild to moderate" limitations in Plaintiff's ability to use reason and judgment to make work-related decisions but no evidence of other mental health limitations. (T. 13-14, 534-537). The ALJ also considered Plaintiff's psychiatric treatment history as reflected in the record. (T. 13-14, 336, 1349-1367, 1376-1382). In doing so, the ALJ found that Plaintiff's most recent counseling records reflect an improvement in her ability to manage her stress levels and process her grief and other emotions after traumatic events. (T. 13-14, 1365-1367, 1377).

The ALJ's thorough analysis indicates sufficient consideration of her impairments in relation to the Listings, and his findings are supported by substantial evidence. In addition, the court's review has not identified any medical findings in the record that would contradict the ALJ's findings. As such, this court finds no grounds for remand based upon the ALJ's determination that Plaintiff did not have a Listed Impairment after the Cessation Date.

## VII.    MEDICAL IMPROVEMENT

### A.  Legal Standard

The regulations define "Medical Improvement" as

. . . any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .

20 C.F.R. § 404.1594(b)(1).

To determine whether Medical Improvement has occurred, the ALJ must compare the current medical severity of plaintiff's impairment to the severity of that impairment at the time of the most recent favorable decision. *Douglass v. Astrue*, 496 Fed. App'x 154, 155 (2d Cir. 2012).

### B.  The ALJ had substantial evidence to find that Medical Improvement had occurred by Plaintiff's Cessation Date.

The ALJ's determination that Plaintiff demonstrated Medical Improvement by April 9, 2019 largely relied on the same evidence as his Listing analysis. The ALJ again cited imaging records showing no definitive evidence of "recurrent or metastatic disease within the chest, abdomen, or pelvis" in 2019 and 2020. (T. 15, 1101-1102). The ALJ also cited oncology treatment notes showing Plaintiff had been maintaining "an adequate appetite and energy level" with no long-term complications associated with Plaintiff's chest, lungs, abdomen, bowel, or bladder, along with an August 2020 oncology report describing Plaintiff as "doing well

11

clinically." (T. 15, 1101). Accordingly, the ALJ had marshaled substantial evidence to support

his finding that Plaintiff experienced Medical Improvement by the Cessation Date. *See Kennedy*

*v. Colvin*, No. 14–CV–6397P, 2015 WL 5510818 at \*9 (W.D.N.Y. September 17, 2015) (ALJ

can properly rely upon conservative treatment and normal findings upon examination in

concluding that individual experienced a medical improvement) (collecting cases).

## VIII.   RFC DETERMINATION

### A.  Legal Standard

RFC is defined as "'what an individual can still do despite his or her limitations. . . . .

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in

an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d

200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation

omitted)). "In making a residual functional capacity determination, the ALJ must consider a

claimant's physical abilities, mental abilities, symptomology, including pain and other limitations

which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F.

Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related

limitations created by an individual's response to demands of work ... must be reflected in the

RFC assessment.'" *Hendrickson v. Astrue*, 5:11-CV-927 (ESH), 2012 WL 7784156, at \*3

(N.D.N.Y. Dec. 11, 2012) (quoting S.S.R. 85-15, 1985 WL 56857, at \*6). The RFC

determination "must be set forth with sufficient specificity to enable [the Court] to decide

whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d

582, 587 (2d Cir. 1984).

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence

available to make an RFC finding that [is] consistent with the record as a whole,' even if that

finding does not perfectly correspond with any of the opinions of cited medical sources." *Tanya S. v. Saul*, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)).  However, it is well established that ALJs are not medical professionals; therefore, ALJs are "not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id.* (internal quotation marks and citation omitted); *see Charland v. Comm'r of Soc. Sec.*, No. 1:13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) ("[A]n ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence.").  "In other words, there must be substantial evidence to support a finding of functional limitation(s) or lack thereof." *Tanya*, 410 F. Supp. 3d at 445.

"Before assessing the claimant's RFC, the ALJ must consider the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citing S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)).  This requires the ALJ to "make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." *Walters v. Astrue*, No. 11-CV-640 (VEB), 2013 WL 598331, at *3 (N.D.N.Y. Feb. 15, 2013); 20 C.F.R. §§ 404.1513(a)(2)(i), 404.1569a(a).  "The claimant's RFC can be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy only after the function-by-function analysis has been completed." *Knighton*, 861 F. Supp. 2d at 66 (citation omitted); *see Walters*, 2013 WL 598331, at *3 ("Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, e.g., sedentary, light, medium, heavy, and very heavy.").

**B. The ALJ had substantial evidence to find that Plaintiff has the RFC to perform less than the full range of light work since the Cessation Date.**

"Light work" is ordinarily defined as work that

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

As stated above, the ALJ determined that plaintiff had the RFC to perform less than the full range of light work, with certain other restrictions including postural limitations to allow only occasional stooping, kneeling, crouching, and crawling; only occasional climbing of stairs and ramps and no use of ladders, ropes, or scaffolds; and avoidance of concentrated exposure to respiratory irritants, unprotected heights, heavy machinery, and the use of motor vehicles for work purposes. (T. 15-16). The ALJ also limited Plaintiff to unskilled, low stress occupations that involved simple, routine tasks, basic work-related decisions, rare changes to the workplace, and occasional interaction with the public. (T. 16).

In calculating plaintiff's RFC, the ALJ evaluated the March 7, 2019 consultative medical opinion prepared by Dr. Kautilya Puri, along with plaintiff's medical records and her hearing testimony.[1] (T. 18, 530-533). Prior to her examination by Dr. Puri, Plaintiff described her current treatment for asthma and bilateral carpal tunnel syndrome, along with her cancer

---

[1] There were no treating source opinions in the record addressing Plaintiff's physical impairments.

treatment history. (T. 530).  She reported being able to perform "some" cooking, cleaning, laundry, and shopping. (T. 531).  Dr. Puri observed that Plaintiff did not appear in any acute distress, maintained good eye contact, and did not demonstrate any issues with judgment, memory, or perception. (T. 531-532).

During the examination, Plaintiff demonstrated a normal gait, and required no assistive devices. (T. 531).  She did not require assistance changing for the examination, getting on or off the examination table, or rising from a chair. (*Id.*)  Dr. Puri found normal lung function and regular heart rhythm.  (T. 531-532).  As previously discussed, Dr. Puri found no abnormalities in the cervical or lumbar spine on examination.  (T. 532).  Plaintiff demonstrated full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally, with full strength in her upper and lower extremities.  (*Id.*)  Her hand and finger dexterity were intact, with full grip strength in both hands.  (*Id.*)

Based on the consultative examination, Dr. Puri opined that Plaintiff had no "object limitations to communication, fine motor, or gross motor activity." (T. 533).  He found no limitation to her gait or her activities of daily living, with mild limitations with regard to squatting, bending, stooping, and kneeling. (*Id.*)  Dr. Puri recommended that Plaintiff avoid jobs that require repetitive movements and environments that would aggravate her respiratory complaints. (*Id.*)  The ALJ reviewed Dr. Puri's opinion and assigned it "significant weight" because it was consistent with the consultative examination results and the overall record. (T. 19).

As discussed above, non-examining state agency consultant Dr. Abueg reviewed Plaintiff's then-current medical record and prepared an opinion dated April 8, 2019. (T. 19, 141-148).  With regard to RFC, Dr. Abueg opined that Plaintiff could occasionally lift and/or carry

up to twenty pounds, and frequently lift and/or carry up to ten pounds. (T. 145). The state agency consultant further opined that Plaintiff could stand and/or walk for a total of about six hours during an eight-hour workday and could sit for a similar length of time, with normal breaks. (*Id.*) Overall, Dr. Abueg opined that Plaintiff was capable of performing light work. (T. 19, 146). The ALJ assigned "some weight" to Dr. Abueg's opinion but rejected its lack of any postural limitations as inconsistent with the broader record. (T. 19, 145).

The ALJ also considered the available opinion evidence related to Plaintiff's mental health. Dr. David Schaich performed a consultative psychiatric examination of Plaintiff on April 1, 2019. (T. 534-537.) Prior to the examination, Plaintiff advised that she attended monthly counseling sessions with a therapist and saw her psychiatrist twice monthly, but had never required inpatient psychiatric treatment. (T. 534). She reported normal sleep patterns and a normal appetite, and denied any symptoms of depression or anxiety. (T. 535).

During the consultative examination, Plaintiff displayed a cooperative demeanor and an "adequate" manner of relating, social skills, and overall presentation. (*Id.*). She showed coherent and goal-directed thought processes with no evidence of delusions, hallucinations or paranoia. (*Id.*) She appeared oriented to person, place, and time but showed mildly impaired attention and concentration, with difficulty completing some calculation exercises. (*Id.*) Dr. Schaich also opined that Plaintiff's recent and remote memory skills were intact, as she was able to recall three objects immediately and two out of three objects after a delay, and successfully repeated a series of numbers forward and backward. (T. 536).

Based on his examination, Dr. Schaich found no evidence of any limitations in Plaintiff's ability to understand, remember, and apply simple or complex directions and instructions, but "mild to moderate" limitations in her ability to use reason and judgment to make work-related

decisions. (*Id.*)  The consultative examiner likewise found no evidence of limitations in Plaintiff's ability to interact adequately with supervisors, co-workers, and the public, her ability to sustain concentration and perform at a consistent pace, or to sustain an ordinary routine and regular attendance at work. (*Id.*)  He found no evidence of limitations in her ability to regulate her emotions, control her behavior, or maintain her own well-being, or in her ability to recognize normal hazards and take appropriate precautions. (*Id.*)  Dr. Schaich attributed any difficulties present to a learning disability but found no psychiatric problems "significant enough to interfere with [Plaintiff's] ability to function on a daily basis. (T. 537).

The ALJ assigned "partial weight" to Dr. Schaich's opinion. (T. 20-21).  He explained that Dr. Schaich's overall conclusion that Plaintiff's mental health impairments were not disabling was supported by the record, but his opinion did not account for more recent evidence of the impact of stress and trauma on Plaintiff's daily activities.[2] (T. 20-21, 1350, 1354).  The ALJ also found that Dr. Schaich's report failed to establish a connection between the "mild to moderate" limitations depicted in Plaintiff's use of reason and judgment and the largely unremarkable examination results. (T. 20-21, 535-536).

The ALJ then considered the opinion of Licensed Clinical Social Worker ("LCSW") Donna Sauer Jones, dated March 29, 2021. (T. 20, 1335-1347).  LCSW Jones reported that Plaintiff had received regular mental health treatment for stress and PTSD since June 2016, with the record documenting her individual counseling sessions with Plaintiff dating back to at least August 2019. (T. 639, 1292-1298).  She opined that Plaintiff had "marked" limitations with

---

[2] The ALJ relied on the same rationale to reject as "non-persuasive" the April 8, 2019 opinion of non-examining state agency psychiatric consultant Dr. Kamin that Plaintiff had no severe mental health impairments. (T. 20, 140).

regard to sustaining an ordinary routine and regular attendance at work, as well as working a full day without extra breaks, attributing these difficulties to transportation issues and a lack of stamina. (T. 1344).  She further opined that Plaintiff had "marked" limitations in her ability to make plans independently of others and to ask for help from others. (T. 1342, 1344).  LCSW Jones also opined that Plaintiff had a number of "moderate" limitations in various areas of mental functioning, including asking and answering questions, identifying and solving problems, using reason and judgment to make work-related decisions, communicating clearly and effectively, and responding appropriately to requests, suggestions, and criticism. (T. 1341-1343).

Based on these limitations, LCSW Jones opined that Plaintiff's attention and concentration would be significantly impaired, causing her to be off task at least twenty percent of the workday. (T. 1345).  The ALJ assigned this opinion "partial weight" due to a lack of evidentiary support in the record for these limitations. (T. 20).  In particular, the ALJ cited LCSW Jones' own reports that Plaintiff "made progress in therapy" and was "more stable." (T. 20, 1347).  The ALJ also found the opinion to be inconsistent with treatment notes from October 2019 describing Plaintiff as "happy and relaxed," with intact memory and normal thought content despite some poor judgment. (T. 20, 1293).  The ALJ also found LCSW Jones' opinion conflicted with the decision to reduce the frequency of Plaintiff's counseling appointments due to an improvement in her ability to manage stress. (T. 20, 1300).

The ALJ's RFC analysis also included a review of relevant treatment notes after the Cessation Date. (T. 17-19).  During this period, Plaintiff sought treatment[3] for back pain, carpal

---

[3] The court notes that some of these appointments were by telemedicine, and thus did not include a detailed physical examination. (T. 713, 1415).

tunnel syndrome, and respiratory impairments on multiple occasions. (T. 1292-1306, 1415-1416, 1418-1421). Physician-reviewed imaging reports showed only mild or moderate degenerative changes in the cervical and lumbar spine. (T. 1418-1421). The ALJ reasonably found these reports consistent with physician notes from the same period, during which Plaintiff did not receive any epidural injections or other therapeutic measures such as over-the-counter or prescription pain medication. (T. 1415). Plaintiff had surgery to address carpal tunnel syndrome in June 2020 but did not report any significant improvement.[4] (T. 101-102, 1360). With regard to respiratory impairments, pulmonary examinations during this period were normal, with Plaintiff's asthma appearing to be well-controlled with medication. (T. 18, 713, 1351, 1370, 1383, 1386-1387, 1392). The ALJ also considered the psychiatric treatment notes in the record, noting that Plaintiff showed improvement in mood and her ability to handle stressful situations and had reduced the frequency of her counseling sessions. (T. 18-19, 1293, 1354-1359). Other contemporaneous treatment notes include Plaintiff's report that her dog "kept her up and busy," which the ALJ reasonably factored into his evaluation of Plaintiff's exertional limitations. (T. 1354).

Going beyond the medical evidence, the ALJ also considered Plaintiff's testimony as part of the RFC determination. (T. 16). With regard to continued back pain, the ALJ considered Plaintiff's testimony that she had never been prescribed prescription pain medication and did not

---

[4] Although Plaintiff reported lingering effects of carpal tunnel syndrome, the RFC limitation to "frequent" handling and fingering is supported by substantial evidence in light of Dr. Puri's opinion and the lack of further medical treatment for the condition. *See Tracy L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1399 (GLS), 2021 WL 765733 at *5 (N.D.N.Y. February 26, 2021) (finding limitation to frequent fingering and handling was supported by substantial evidence despite continued carpal tunnel symptoms where ALJ relied upon consultative examination results and lack of follow-up treatment).

use over-the-counter pain medication because she deemed it ineffective. (T. 16, 89).  The ALJ

questioned Plaintiff regarding the use of her hands, and considered her testimony that she

avoided opening jars, wearing clothing with buttons, and other activities that required fine

manipulation. (T. 101-102).  With regard to mental health treatment, Plaintiff described her

current regimen of regular counseling and low dosage sleep-aid medication as helpful but

expressed concerns that her dosage should be increased. (T. 17, 90, 1336, 1353).

     As an initial matter, "there is no requirement that the ALJ pick one RFC [opinion] and

use that particular evaluation in its entirety." *Alexandrea R.R. v. Berryhill*, No. 15-CV-756

(FPG), 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019).  Rather, "it is the ALJ's

responsibility to choose between properly submitted medical opinions and other competent

evidence to piece together an overall [RFC] assessment." *Id.*  It is also the province of the ALJ

to resolve genuine conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

However, the Commissioner need not "reconcile explicitly every shred of medical testimony."

*Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174,

176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the objective medical record,

medical opinion evidence, and hearing testimony by placing the greatest reliance on that

evidence that he deemed most consistent with plaintiff's overall treatment record and activities.

In doing so, the ALJ appropriately evaluated the conflicting medical evidence and plaintiff's

testimony and made an RFC finding for the period after the Cessation Date that was consistent

with the overall record. *See Matta*, 508 F. App'x. at 56 (although ALJ's conclusion did not

perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all

of the evidence available to make an RFC finding that was consistent with the record as a

whole).  In light of the ALJ's analysis, this court concludes that his RFC determination that

Plaintiff could perform less than the full range of light work was supported by substantial evidence, as summarized above. *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

## IX.    AVAILABILITY OF WORK

### A.  Legal Standard

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-77.

### B.  The ALJ had substantial evidence to find that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.

In response to a hypothetical question based upon plaintiff's RFC, VE Sabella testified at the May 11, 2021 hearing that an individual matching Plaintiff's functional limitations would be able to perform several representative jobs existing in significant numbers in the national economy. (T. 107-115). Because this court has found the ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE Sabella was proper, and the resulting determination that there were jobs Plaintiff could perform was supported by substantial evidence. Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his ultimate determination that Plaintiff was not

under a disability within the meaning of the SSA between the Cessation Date and the date of the ALJ's decision.[5]  20 C.F.R. §§ 404.1594(f).

ACCORDINGLY, it is

RECOMMENDED that the Commissioner's decision be **AFFIRMED**, Defendant's motion for judgment on the pleadings (Dkt. No. 21) be **GRANTED** in its entirety, and Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**, and it is further

ORDERED that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).[6]

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

---

[5]  As the Commissioner has pointed out, the ALJ's decision would not preclude Plaintiff from applying for and obtaining disability benefits if she became disabled after June 14, 2021, the date of the ALJ's decision. (Dkt. No. 21 at 20).

[6]  If you are proceeding pro se and served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday  Fed. R. Civ. P. 6(a)(1)(c).

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated:    February 3, 2023

       Binghamton, New York

                                           Miroslav Lovric
                                           U.S. Magistrate Judge